**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| WEST BEND INSURANCE COMPANY, f/k/a WEST BEND MUTUAL INSURANCE COMPANY,<br><br>Plaintiff,<br><br>v.<br><br>UNITED STATES OF AMERICA CHESS FEDERATION, *et al.*,<br><br>Defendants. | Civil Action No. 24-11445 (MAS) (TJB)<br><br>**MEMORANDUM OPINION** |

**SHIPP, District Judge**

This matter comes before the Court on Defendants United States of America Chess Federation ("US Chess") and Randy Bauer's ("Bauer") (collectively the "Moving Defendants") Motion to Dismiss or, alternatively, to Transfer Venue ("Motion"). (ECF No. 12.) Plaintiff West Bend Insurance Company, f/k/a West Bend Mutual Insurance Company ("West Bend") opposed (ECF No. 13), Defendant Jennifer Shahade ("Shahade") filed correspondence in support of the opposition (ECF No. 14), and the Moving Defendants replied (ECF No. 15). The Court has carefully considered the parties' submissions and decides the matter without oral argument under Local Civil Rule 78.1. For the reasons outlined below, the Court grants the Moving Defendants' Motion to Transfer Venue to the United States District Court for the Eastern District of Missouri.

I.   **BACKGROUND**

In May 2019, West Bend began to provide US Chess with employment practices liability insurance policies, and in May 2020, began to provide US Chess with not-for-profit organization directors, officers, and trustees liability insurance policies. (Defs.' Moving Br. 1-2, ECF No. 12; Policies, ECF Nos. 1-1 to 1-8.) West Bend continued to provide coverage to US Chess under the two types of policies (collectively the "Policies") through 2025. (Compl. ¶¶ 9, 17, ECF No. 1.)

In June 2022, US Chess received an e-mail message from Shahade, a US Chess employee at the time. (Compl. ¶¶ 27, 46; State Ct. Compl. ¶¶ 2, 78, ECF No. 1-9; Bartlett Decl. ¶¶ 9, 11-12, ECF No. 12-4.) In the e-mail message, Shahade alleged that Alejandro Ramirez ("Ramirez"), a chess competitor, physically and sexually assaulted her in 2011 and 2014. (State Ct. Compl. ¶¶ 2, 53, 75.) Thereafter, US Chess initiated an investigation against Ramirez and sanctioned him. (Bartlett Decl. ¶¶ 13-14.)

From February into March 2024, during the policy period of January 1, 2024 to January 1, 2025,[1] Shahade's counsel sent US Chess a "litigation hold letter" along with additional correspondence threatening legal action against both US Chess and Bauer, a "Member at Large" of the US Chess' Executive Board. (Bartlett Decl. ¶¶ 16, 18, 19; Defs.' Moving Br. 1.) US Chess "immediately" forwarded such documentation and made a claim to West Bend. (Bartlett Decl. ¶¶ 16, 18, 19; Defs.' Moving Br. 4.) "Before February 2024, US Chess was not aware that [Shahade] intended to assert legal claims against US Chess or [Bauer]." (Bartlett Decl. ¶ 17.)

---

[1] For the Policies during the January 1, 2024 to January 1, 2025 period, Charles L. Crane Agency Company of Saint Louis, Missouri was the brokerage agency and the Policies were modified under Missouri Law. (2024-2025 Employment Liability Pol'y, ECF No. 1-4; 2024-2025 D&O Pol'y, ECF No. 1-8.)

2

After US Chess forwarded the documentation and made the claim to West Bend, in May 2024, West Bend filed a declaratory judgment action in the United States District Court for the Middle District of Tennessee "seeking a determination that West Bend did not have a duty to defend or indemnify US Chess or Bauer against a pre-suit 'claim' made by [Shahade]." (Cert. in Support of Opp'n ¶ 4, ECF No. 13-1; M.D. Tenn. Compl., ECF No. 13-1 Ex. B.) Thereafter, US Chess filed a motion to dismiss the Middle District of Tennessee case based on improper venue, or, alternatively, to transfer the case to the Eastern District of Missouri. (M.D. Tenn. Mot. to Dismiss, ECF No. 13-1 Ex. C.)

In July 2024, Shahade filed a lawsuit in New Jersey state court ("Underlying Action") against: (1) Peter Tamburro, a journalist and the New Jersey Chess Federation President; (2) US Chess; and (3) Bauer for retaliation, gender bias and discrimination, intentional and/or grossly negligent infliction of emotional distress, defamation and business libel through a New Jersey publication, false light/invasion of privacy, and conspiracy to violate the New Jersey Civil Racketeer Influenced and Corrupt Organizations Act ("NJ RICO")[2] based on the ways in which the defendants handled reported assaults and other misconduct that took place primarily in New Jersey. (*See generally* State Ct. Compl.; Defs.' Moving Br. 1, 3; Compl. ¶¶ 34-44.)[3]

In November 2024, the Middle District of Tennessee transferred the case to the Eastern District of Missouri. (M.D. Tenn. Ord., ECF No. 12-5 (stating that "[t]he Court agrees that the Eastern District of Missouri has 'some' relevant connection to this lawsuit, [] which is certainly more than the Middle District of Tennessee that has *no* connection to this lawsuit.") (emphasis in

---

[2] This Court later dismissed the NJ RICO claim. (Op., Case 24-7909 ECF No. 38.)

[3] US Chess and Bauer removed the Underlying Action to this Court. (*See* Compl. ¶ 34; Notice of Removal for Underlying Action, Case 24-7909 ECF No. 1.)

original).) Thereafter, in December 2024, West Bend voluntarily dismissed the Eastern District of Missouri action without prejudice because "after having the benefit of seeing what was actually alleged in the Underlying Action in New Jersey, West Bend realized that New Jersey was the only venue that could afford complete relief." (Pl.'s Opp'n Br. 5, ECF No. 13.) Further, "West Bend dismissed the [Eastern District of Missouri action] with the intention of filing the current declaratory action to include Tamburro, who is a citizen of New Jersey[,] and Shahade, whose Underlying Action is pending in this venue." (*Id.* at 6.)

Later in December 2024, West Bend filed the instant declaratory judgment action against: (1) US Chess; (2) Bauer; (3) Tamburro; and (4) Shahade, the plaintiff in the Underlying Action, seeking a judicial declaration that it does not have a duty to defend or indemnify US Chess, Bauer, or Tamburro in connection with Shahade's allegations of sexual harassment and abuse outlined in her e-mail message. (*See generally* Compl.)[4] Specifically, West Bend seeks a declaration that there is no insurance coverage available, under the Policies issued for the May 31, 2022 to August 30, 2022 period, based on Shahade's e-mail message to US Chess notifying it of her allegations. (*Id.* ¶ 46.) In support of its position, West Bend outlines specific arguments all based on policy interpretation. (*See id.* ¶ 48.)

The Moving Defendants moved to dismiss the instant action pursuant to Federal Rule of Civil Procedure 12(b)(3),[5] or in the alternative, to transfer the action to the Eastern District of

---

[4] Other than Tamburro (Compl. ¶ 4), no party resides in New Jersey. US Chess is incorporated in Illinois and moved its principal place of business from Tennessee to Missouri in July 2022 (*id.* ¶ 2; Bartlett Decl. ¶¶ 6-7); Bauer is an Iowa resident (Compl. ¶ 3); Shahade is a Pennsylvania resident (*id.* ¶ 5); and West Bend is both organized and has its principal place of business in Wisconsin (*id.* ¶ 1).

[5] All references hereafter to "Rule" or "Rules" are in reference to the Federal Rules of Civil Procedure.

4

Missouri. (*See generally* Defs.' Moving Br.) West Bend opposed the Motion, and Shahade filed correspondence in support of the opposition, both parties arguing that the District of New Jersey is the proper venue. (Pl.'s Opp'n Br.; Shahade Letter, ECF No. 14.) Moving Defendants replied to the opposition. (ECF No. 15.) The Court now considers the instant Motion.

## II.   **LEGAL STANDARD**

Under the federal venue statute, venue is proper in the following districts:

> (1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located;
>
> (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or
>
> (3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action.

28 U.S.C. § 1391(b).

Litigants unhappy with the venue can move to transfer venue. Under either 28 U.S.C. §§ 1404(a) or 1406(a), a federal district court may transfer a civil action to a different venue. The former provides that "a district court may transfer any civil action to any other district or division where it might have been brought" considering "the convenience of parties and witnesses" and "the interest of justice." 28 U.S.C. § 1404(a). The latter provides that a district court with improper venue "shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought." 28 U.S.C. § 1406(a). "Section 1404(a) provides for the transfer of a case where both the original and the requested venue are proper. Section 1406, on the other hand, applies where the original venue is improper and provides for either transfer or dismissal of the case." *Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 878 (3d Cir. 1995); *see also*

*Lafferty v. St. Riel*, 495 F.3d 72, 77 (3d Cir. 2007) ("Section 1406(a) comes into play where plaintiffs file suit in an improper forum."). The burden of establishing the need for transfer rests with the party seeking the transfer. *Jumara*, 55 F.3d at 879 (citations omitted).

### III. DISCUSSION

After careful review, this Court finds that the District of New Jersey is an improper venue, and that the Eastern District of Missouri is a proper venue. Transfer, thus, is appropriate.

#### A. The District of New Jersey Is an Improper Venue

West Bend avers that "[v]enue is proper pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to this claim occurred, or a substantial part of the action is situated herein." (Compl. ¶ 8; Pl.'s Opp'n Br. 7.) West Bend further contends that the Moving Defendants cannot argue that a substantial part of the events did not take place in the District of New Jersey when they removed the Underlying Action to this Court. (Pl.'s Opp'n Br. 7-8.) The Court disagrees.

The Court first analyzes whether West Bend's choice of venue is proper. To determine the propriety of West Bend's venue choice, the Court analyzes the three categories in the federal venue statute, 28 U.S.C. § 1391(b). Under that analysis, "[i]f the case falls into at least one of the Section 1391(b) categories, then venue is proper . . . . If it does not, then venue is improper and the case may be transferred." *Monello Landscape Indus., L.L.C. v. Hatch Landscape & Design, Inc.*, No. 16-5803, 2018 WL 2134058, at *3 (D.N.J. May 9, 2018).

Here, none of the three categories points to the District of New Jersey. First, for venue to be proper under Section 1391(b)(1), all the defendants would have to reside in New Jersey. Only Tamburro, however, is a New Jersey resident. (*See* Compl. ¶¶ 1-5.) As such, West Bend's choice of venue is improper under Section 1391(b)(1).

Second, under Section 1391(b)(2), the Court finds that a "substantial part of the events" giving rise to West Bend's claim occurred outside the District of New Jersey. *See* 28 U.S.C. § 1391(b)(2). To determine whether Section 1391(b)(2) applies, courts "look at the nature of the dispute and 'the location of those events . . . giving rise to the claim[,]'" as well as "the conduct that allegedly caused the damages at issue." *Howmedica Osteonics Corp. v. DJO Glob., Inc.*, No. 16-2330, 2017 WL 1136671, at *4 (D.N.J. Mar. 27, 2017) (first quoting *Bockman v. First Am. Mktg. Corp.*, 459 F. App'x 157, 161 (3d Cir. 2012)). Here, the dispute at issue concerns interpretation of the Policies. (*See generally* Compl.)

"[T]he issue of interpretation of the insurance [P]olicies [in a coverage dispute] 'arises from the contacts relevant to the formation of the insurance agreement,'" including where the Policies were executed, where the parties to the coverage dispute are located, where the policy broker is located, where the Policies are negotiated, where the insured pays for the Policies, and where the Policies are issued. *Ohio Sec. Ins. Co. v. Premium Food Grp., Inc.*, No. 21-15690, 2022 WL 2358425, at *5 (D.N.J. June 30, 2022) (quoting *Northland Ins. Co. v. Berkebile Oil Co.*, No. 03-11, 2003 WL 22995127, at *5 (W.D. Va. Dec. 12, 2003)) (analyzing facts that warranted transfer in a New Jersey declaratory judgment action arising out of a coverage dispute in connection with an underlying New Jersey state court action); *Harleysville Ins. Co. of N.J. v. Clark*, No. 05-5566, 2006 WL 2135834, at *6 (D.N.J. July 27, 2006) ("Venue is proper here for this declaratory judgment action because a substantial part of the events giving rise to the insurance coverage dispute—including the negotiation, payment and issuance of the policy to the New Jersey insured—occurred in New Jersey.").

Courts look less to the nature of an underlying action to determine if venue is proper for a coverage dispute, especially if the claims and parties between the two cases are not substantially

7

similar. *See, e.g.*, *Premium Food Grp., Inc.*, 2022 WL 2358425, at *7 (demonstrating that the existence of an underlying New Jersey state court action does not mean that New Jersey is a proper venue when analyzing personal jurisdiction in a declaratory judgment action arising out of an insurance policy dispute); *Selective Ins. Co. of Se. v. Food Mktg. Merch., Inc.*, No. 13-193, 2013 WL 2149686, at *5 (D.N.J. May 16, 2013) (demonstrating that the existence of an underlying New York federal action does not mean New Jersey is an improper venue in a declaratory judgment action arising out of an insurance policy dispute); *Kelly v. Maxum Specialty Ins. Grp.*, 868 F.3d 274, 285-87 (3d Cir. 2017) (articulating that the underlying state court action that seeks to determine a defendant's liability for an alleged harm and the federal action that seeks only a declaratory judgment on an insurer's obligation to defend and indemnify the defendant are not parallel because the parties and the claims are not "substantially similar").[6]

Here, West Bend brings this action "to determine the rights, obligations[,] and liability that exist between [defendants] under the Policies[.]" (Compl. ¶ 50.) This claim is distinct from the Underlying Action, in which West Bend is not a party, involving retaliation, bias and discrimination, negligent infliction of emotional distress, defamation and libel, and false light/invasion of privacy. (*Id.* ¶¶ 46-48.) This Court finds that the events giving rise to West Bend's claim in this lawsuit, not the Underlying Action, occurred outside the District of New Jersey.

---

[6] West Bend cites only persuasive authority from Pennsylvania, Alabama, Illinois, and Massachusetts, to the contrary. (*See* Pl.'s Opp'n Br. 9-11.) This Court, however, recognizes other persuasive authority in support of the Court's assessment. *See, e.g.*, *Res. Bank v. Progressive Cas. Ins. Co.*, No. 06-1699, 2007 WL 136320, at *4 (E.D. Pa. Jan. 11, 2007) ("A number of courts have expressed the view that 'the pivotal issue in [a] declaratory judgment action is the interpretation of an insurance policy between the [parties]' and therefore the place of negotiation and execution of the policy is the locus of operative facts for purposes of venue transfer.") (citation omitted and alterations in original).

To name a few: (1) West Bend did not execute the Policies in New Jersey (*id.* ¶ 1); (2) none of the parties are from New Jersey except Tamburro (*id.* ¶¶ 1-5); (3) New Jersey-based agencies did not procure the Policies (2024-2025 Employment Liability Pol'y; 2024-2025 D&O Pol'y); (4) West Bend does not allege it negotiated the Policies in New Jersey; (5) West Bend does not allege US Chess pays for the Policies in New Jersey; and (6) West Bend did not issue the Policies in New Jersey. (Defs.' Moving Br. 5; Defs.' Reply Br. 2). Any events that involve New Jersey relate to the Underlying Action—not this one.[7] As such, West Bend's venue choice under Section 1391(b)(2) is improper.

Finally, the Court need not consider the third prong of the venue statute because there is a "district in which [this] action may otherwise be brought": the Eastern District of Missouri. (M.D. Tenn. Ord.); 28 U.S.C. § 1391(b)(3); *Konica Minolta, Inc. v. ICR Co.*, No. 15-1446, 2015 WL 9308252, at *5 (D.N.J. Dec. 22, 2015) ("[Section] 1391(b)(3) is moot in this case, as the action may be brought [elsewhere]."). In sum, West Bend's choice of the District of New Jersey is improper under any of the Section 1391(b) categories. This Court next turns to whether this case should be transferred.

### B.   The Eastern District of Missouri Is a Proper Venue

The only remaining question is whether the Court should dismiss this case for want of proper venue or transfer the case to the Eastern District of Missouri. Under 28 U.S.C. § 1406(a), "[t]he district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division

---

[7] As previously noted, West Bend contends that the Moving Defendants cannot argue that a substantial part of the events did not take place in the District of New Jersey in this case because they removed the Underlying Action to this Court. (Pl.'s Opp'n Br. 7-8.) Because this action and the Underlying Action are distinct, this Court does not find issues with the Moving Defendants' removal of the Underlying Action.

9

in which it could have been brought." 28 U.S.C. § 1406(a). District courts have broad discretion to decide whether to dismiss or transfer. *See Decker v. Dyson*, 165 F. App'x 951, 954 n.3 (3d Cir. 2006) (citation omitted). Notably, though, courts have cautioned that dismissal is a "harsh remedy" and that "transfer of venue to another district court in which the action could originally have been brought, is the preferred remedy." *See NCR Credit Corp. v. Ye Seekers Horizon, Inc.*, 17 F. Supp. 2d 317, 319 (D.N.J. 1998) (citing *Goldlawr, Inc. v. Heiman*, 369 U.S. 463, 466 (1962)). "A Court transferring venue under [Section] 1406 must simply determine a venue in which the action originally could have been brought that serves the interest of justice." *de Rojas v. Trans States Airlines, Inc.*, 204 F.R.D. 265, 269 (D.N.J. 2001).

Here, the Court sides with the "preferred remedy" and transfers this case to the Eastern District of Missouri—the venue for this action before West Bend voluntarily dismissed the matter without prejudice. (Pl.'s Opp'n Br. 5.) West Bend could have brought this action in the Eastern District of Missouri given that a substantial part of the events took place there. First, the Policies' named insured, US Chess, along with its records and most of its employees, is in Missouri. (2024-2025 Employment Liability Pol'y; 2024-2025 D&O Pol'y; Compl. ¶ 2; Bartlett Decl. ¶ 7; Defs.' Moving Br. 8); *Premium Food Grp., Inc.*, 2022 WL 2358425, at *6 (referencing in part that a New York corporation purchased the insurance policies when transferring the case to New York). Second, Charles L. Crane Agency Company, the broker agency for the Policies covering US Chess' claim to West Bend, is located in Missouri. (2024-2025 Employment Liability Pol'y; 2024-2025 D&O Pol'y); *Premium Food Grp., Inc.*, 2022 WL 2358425, at *6 (referencing in part the use of a New York insurance broker when transferring the case to New York). Third, West Bend issued the Policies covering US Chess' claim to US Chess in Missouri. (Defs.' Moving Br. 5); *Clark*, 2006 WL 2135834, at *6 (referencing in part an insurer issued a policy in New Jersey in support of

finding venue is proper in New Jersey). Moreover, the Policies indicate that they should be interpreted under Missouri law. (2024-2025 Employment Liability Pol'y; 2024-2025 D&O Pol'y.)

In sum, the Eastern District of Missouri is a proper venue, while the District of New Jersey is an improper venue. Transfer, thus, is appropriate.[8]

IV. **CONCLUSION**

For the reasons set forth above, the Court denies the Motion to Dismiss but exercises its discretion to grant the Motion to Transfer the matter to the Eastern District of Missouri. The Court will issue an Order consistent with this Memorandum Opinion.

Dated: September 15, 2025

/s/ Michael A. Shipp
MICHAEL A. SHIPP
UNITED STATES DISTRICT JUDGE

---

[8] To the extent West Bend contends that the District of New Jersey is the only court with personal jurisdiction over it (*See* Pl.'s Opp'n Br. 6-7), the Court disagrees. "The basis for exercising personal jurisdiction over a non-resident party in Missouri is Missouri's long-arm statute." *Myers v. Casino Queen, Inc.*, 689 F.3d 904, 910 (8th Cir. 2012). Missouri's long-arm statute authorizes jurisdiction over defendants as to any cause of action arising from "the making of any contract within [Missouri]" or "the contracting to insure any person, property or risk located within [Missouri] at the time of contracting." Mo. Rev. Stat. § 506.500.1(2), (5) (2025). Here, the gravamen of the Complaint is a dispute over all defendants' rights under a contract—the Policies issued in Missouri. (*See* Compl. ¶ 49 ("An actual controversy exists between West Bend, US Chess, Bauer, Tamburro, and Shahade concerning their respective rights under the Policies[.]"); Defs.' Moving Br. 5.) As such, the Court sees no reason to find that Missouri lacks personal jurisdiction over the defendants.